IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CARL E. DOTSON                                                                                     PLAINTIFF
ADC #122778

V.                              CASE NO. 4:18-CV-935-DPM-BD

CALEB MONROE, *et al*.                                                                      DEFENDANTS

## RECOMMENDED DISPOSITION

**I.   Procedure for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Chief Judge D. Price Marshall Jr. Any party may file written objections if they disagree with the findings or conclusions set out in the Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, all objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may waive any right to appeal questions of fact.

**II.   Discussion:**

Plaintiff Carl E. Dotson filed this 42 U.S.C. § 1983 lawsuit on December 19, 2018, without the help of a lawyer. (Docket entry #2) He claims that Little Rock Police Officer Caleb Monroe, the only remaining Defendant, violated his rights by unlawfully searching and detaining him.

Mr. Dotson has moved for summary judgment, as has Officer Monroe. (#35; #40-43) Officer Monroe responded to Mr. Dotson's motion. (#44) Mr. Dotson has filed a response to Officer Monroe's motion. (#60) As set out below, the material facts are not in dispute.

### A.  Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no real dispute about any fact important to the outcome of the case. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). The moving party bears the burden of producing admissible evidence showing that there is no real dispute. If they offer such evidence, the other party must meet evidence with evidence to avoid summary judgment. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

### B.  Undisputed Facts[1]

According to Officer Monroe's affidavit, on June 3, 2017, he was dispatched to a Little Rock McDonald's restaurant after the Little Rock Police Department (LRPD) received a report of a "robbery of an individual." (#40-1 at p.1) According to an LRPD

---

[1] While Mr. Dotson filed a response to Officer Monroe's motion and continues to maintain that he was subjected to an unlawful search and seizure (#60 at 2), he has not specified material facts that are genuinely disputed. *See* Local Rule 56.1(c) ("All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party under paragraph (b)).

dispatch, a woman had reported being robbed and threatened with a "machete knife," after which the suspect walked into the woods behind the restaurant. (*Id.*)

When Officer Monroe arrived at the scene, Crystal Dodson told him that "Cain," who was later identified as Carl Dotson, had robbed her then threatened to beat her when she tried to get the money back. (*Id.*) Ms. Dodson also told Officer Monroe that Cain also picked up a pellet gun and pumped it as if to shoot her.[2] She further stated that she was afraid that Cain would attack her because he had a reputation for violence. (*Id.*)

Officer Monroe states that he went into the woods with an unknown man, who identified Mr. Dotson. (#40-1 at 2) Once he saw that Mr. Dotson was not carrying a machete, he called him over and performed a pat-down search while Mr. Dotson had his arms placed on a stack of pallets.

Officer Monroe found a knife clipped inside Mr. Dotson's right pocket. (*Id.* at 2) When Officer Monroe reached for the knife, Mr. Dotson swatted his hand away and began to turn towards him. At that point, Officer Monroe put Mr. Dotson's right arm behind his back and escorted him to his police car. (*Id.*)

Once they were at the car, Mr. Dotson attempted to flee, as depicted in a video from Officer Monroe's mobile video recorder. (*Id.*) Officer Monroe responded by holding Mr. Dotson's head in a "bear hug." (*Id.*) Mr. Dotson ultimately broke free, however, and ran into the woods. (*Id.*) Officer Monroe did not attempt to follow him.

---

[2] Much of Mr. Dotson's conversation with Officer Monroe is captured on the officer's mobile video recorder; however, the Court did not hear reference to a pellet gun. (#43)

3

### C.  Unlawful Search and Seizure Claim

The Fourth Amendment protects against unreasonable searches and seizures. But, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22 (1968). A so-called *Terry* stop "without a warrant is valid only if police officers have a reasonable and articulable suspicion that criminal activity may be afoot." *U.S. v. Newell*, 596 F.3d 876, 879 (8th Cir. 2010).

Officer Monroe had reasonable suspicion to stop Mr. Dotson based on Ms. Dodson's allegations that Mr. Dotson had taken her money and threatened her and based on her statement that Mr. Dotson had a reputation for violent behavior. *See United States v. Maltais*, 403 F.3d 550, 554 (8th Cir. 2005) (police may rely on information provided by others in forming reasonable suspicion). "A *Terry* stop may become an arrest, requiring probable cause, 'if the stop lasts for an unreasonably long time or if officers use unreasonable force.'" *Waters v. Madson*, 921 F.3d 725, 737 (8th Cir. 2019) (internal citations omitted).

When officers conduct a *Terry* stop, they are permitted to take reasonable measures to protect their personal safety and to maintain the status quo. *Id.* (internal citations omitted). A pat-down search may be a reasonable measure; and pat-down searches are lawful when "specific and articulable facts . . . warrant a reasonable officer

4

in the belief that the person detained was armed and dangerous." *Bennett v. City of Eastpointe*, 410 F.3d 810, 841 (8th Cir. 2005).

Considering the totality of the circumstances, this stop was not unreasonably long; and the force Officer Monroe used was reasonable. The video recording of the stop that Officer Monroe attached to his motion shows that approximately 11 minutes elapsed between the time Officer Monroe left his patrol car to look for Mr. Dotson and the time that Mr. Dotson escaped his grip and ran into the woods. (#43) During that 11 minutes, Officer Monroe had to locate Mr. Dotson, which required a "short walk into the woods." (#40-1 at 2)

As Officer Monroe escorted Mr. Dotson out of the woods holding his right arm behind his back, Mr. Dotson smelled of intoxicants. (*Id.* at 3) As the video shows, Mr. Dotson was defiant, which prolonged the encounter. Courts have held, under similar circumstances, that a twenty-minute stop was reasonable. *See Madson*, 921 F.3d at 737; *United States v. Sharpe*, 470 U.S. 675, 686-88 (1985). Here, the stop ended in roughly half that time. All things considered, the length of the *Terry* stop was reasonable.

After securing the pocket knife and walking Mr. Dotson out of the woods for safety reasons, Officer Monroe tried to handcuff Mr. Dotson. (#40-1 at 2) Officer Monroe's "use of handcuffs during a *Terry* stop . . . requires some reasonable belief that the suspect is armed and dangerous or that the restraints are necessary for some other legitimate purpose." *Madson*, 921 F.3d 737. As noted, Officer Monroe had been told that Mr. Dotson was armed with a "machete knife" and that he was in possession of a pellet

5

gun. Ms. Dodson had told Officer Monroe that Mr. Dotson had a reputation for violence and had threatened her with violence after robbing her. Officer Monroe found a knife in Mr. Dotson's pocket; and Mr. Dotson swatted at him and turned towards him when he attempted to secure the knife. Furthermore, Officer Monroe was the only officer at the scene and had reason to believe that Mr. Dotson was intoxicated. (#40-1 at 3).

Under these circumstances, it was reasonable for Officer Monroe to lead Mr. Dotson out of the woods for safety reasons and to attempt to handcuff him. And, as the video reflects, Mr. Dotson remained defiant and struggled. Officer Monroe acted reasonably in these undisputed circumstances. *See Madson*, 921 F.3d at 738 (*citing El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 457-58 (8th Cir. 2011)). Because both the duration of the stop and the force used were reasonable, Officer Monroe's actions do not rise to the level of a constitutional violation.[3]

Mr. Dotson believes the search and seizure were unlawful, but he has not come forward with any evidence to rebut Officer Monroe's evidence. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010). In his response to Officer Monroe's motion for summary judgment (#60), Mr. Dotson alleges that Officer Monroe used excessive force; however, that is the first time he has claimed excessive force. In any event, the video does not support an excessive-force claim.

---

[3] Because the Court finds that Mr. Dotson's claims fail as a matter of law, the Court will not address Officer Monroe's qualified immunity argument.

Some statements in Mr. Dotson's motion for summary judgment are unsupported with any evidence; others are contrary to the overwhelming weight of evidence in the record. For example, Mr. Dotson maintains that Ms. Dodson, the robbery victim, was not present at the scene of his arrest. This is countered by direct evidence provided by Officer Monroe, including a video.

Mr. Dotson states that witnesses who were going to support his allegations now feel threatened by police officers and will no longer provide declarations. (*Id.*) He continues to maintain that the search of his person was unlawful, but he has provided no evidence to indicate that any material fact is in dispute.

### D.     Official-Capacity Claims

Mr. Dotson's official-capacity claims against Officer Monroe cannot succeed. First, Officer Monroe did not violate Mr. Dotson's federally protected rights, so claims that he violated Mr. Dotson's rights while carrying out a City custom or policy necessarily fail. And second, Mr. Dotson testified in his deposition that he was not aware of any LRPD policies that encourage illegal searches and seizures. (#40-4 at 8) He also agreed that "if [Ms. Dodson] called 911 and stated that a theft has occurred, [it was] reasonable for the officer to believe a crime has occurred." (*Id*. at 10) Mr. Dotson testified that he was not aware of any unconstitutional City policy.

### III.   Conclusion:

There is no genuine dispute as to any fact bearing on the outcome of Mr. Dotson's claims of unlawful search and seizure. Accordingly, the Court recommends that Judge

Marshall deny Mr. Dotson's motion for summary judgment (#35), grant Officer Monroe's Motion for Summary Judgment (#40), and dismiss Mr. Dotson's claims against Officer Monroe, with prejudice, in both individual and official capacities.

Additionally, the Court recommends that Judge Marshall certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal taken from this order and accompanying judgment would be frivolous and would not be taken in good faith.

DATED this 25th day of February, 2020.

_____
UNITED STATES MAGISTRATE JUDGE